FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

03 MAR 20 PM 1:10

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| THE GLIDDEN COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 99-RRA-3071-S |
| | ) | |
| LETICA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTERED**
MAR 20 2003

### MEMORANDUM OF OPINION

In a state court lawsuit, Arthur Baker sued Glidden Company and Letica Corporation for injuries he sustained when, on August 23, 1991, the handle of a five-gallon can of paint allegedly came loose, causing the bucket to fall on and injure Baker's left foot. The jury returned a verdict in favor of the defendants. The actual bucket could not be located for use in the state lawsuit, and, according to the parties in this federal action, is gone for good.

Glidden contends that, pursuant to an indemnity agreement, Letica is liable for the attorney's fees and costs incurred by Glidden in defending the *Baker* action. Letica desires to put Glidden to the proof as to whether the bucket in question was a Letica-manufactered bucket. Glidden counters that, even if the bucket were not a Letica bucket, Letica would still be required to reimburse Glidden because of the wording in the indemnity language.

Both Glidden and Letica have filed summary judgment motions, along with summary judgment evidence, including a stipulation of facts, and briefs. Letica has also filed a motion to strike certain of Glidden's affidavits. It is only the summary judgment evidence specifically pointed out by the parties in support of their summary judgment motions which will be considered.



LETICA'S MOTION TO STRIKE AFFIDAVITS

Letica has filed objections to the affidavits of J. Cole Portis, Eugene M. Squires, and Charles C. Rogers.

*Affidavit of J. Cole Portis*

Portis is an attorney who represented Baker in the state case. He states in his affidavit:

> Mr. Baker was injured when the handle on a bucket of paint some way came loose and dropped on his foot while he was lifting it. Mr. Baker did not have the bucket that fell on his foot, however, he obtained a bucket that was identical to the bucket that fell on his foot. The bucket was the bucket that Mr. Baker brought to his deposition and was the bucket used at trial and introduced into evidence.

Letica objects to Portis' statements of the cause of the accident on the grounds of hearsay and that Portis' version is contrary to the version Glidden's counsel argued to the jury. The affidavit is hearsay, and the motion to strike is due to be granted.[1]

*Affidavit of Eugene Squires*

The motion to strike this affidavit is due to be denied. Because Squires' affidavit concerns the purchase order in question, Letica's objections will be discussed in the "Purchase Order / Indemnity Clause" section, *infra*.

*Affidavit of Charles Rogers*

Charles Rogers was market manager for Glidden's Montgomery area, supervising the sales

---

[1] Baker, however, testified to how the alleged accident occurred.

2

of paint and supplies from the two Montgomery stores. He states in his affidavit:

> The manner in which Glidden did business on the date of Mr. Baker's alleged injury is that, buckets filled with paint were shipped to retail outlets like the one located on Hunter Lane. When an order for paint is received at an outlet, the buckets of paint are run through a tinting machine where color is added to match the color of the paint ordered and then dispatched to the customer.
>
> . . . .
>
> At the time of sale of the paint on August 23, 1996, I had over twenty (20) years experience in dealing with plastic buckets like the buckets delivered to Mr. Baker's employer. <u>At the time, the bucket [was] sold, 98% of all five (5) gallon buckets used by Glidden to fill orders of paint to customers were Letica buckets.</u>
>
> I have seen five (5) gallon buckets manufactured by other bucket manufacturers. They differ from buckets manufactured by Letica in that the Letica bucket had three bands around it and the other manufacturers' buckets had two bands. Also, the ear casing of the Letica buckets where the handle was placed into the bucket was rounded off while other manufacturers' ears were square shaped. See Exhibit C attached to this deposition and made a part of same. I have labeled and marked in red the rings and have marked the ear casing of the can and also labeled it. See also Exhibit D, showing the ear casing detail which is also made a part of this affidavit.
>
> I am very familiar with the five gallon bucket that Mr. Baker said was identical to the bucket that fell on his foot and have examined that bucket on several occasions.
>
> <u>I can tell by looking at that bucket that it was manufactured by Letica because of the number of bands around the bucket and the difference in the ear of the can.</u>
>
> . . . .
>
> Based upon my experience in using five (5) gallon buckets to deliver paint; my experience in using Letica five (5) gallon buckets; my knowledge of the design of other buckets at the time Mr. Baker was hurt; and, my knowledge of the bucket (not the bottom of the bucket where Letica is shown as the manufacturer), I am of the opinion that the bucket alleged to have caused Baker's injuries was manufactured by Letica.

*Affidavit of Charles Rogers* (emphasis added).

3

Letica objects to this affidavit on the grounds of hearsay, lack of personal knowledge, and that Rogers has not been shown to be an expert in bucket identification and therefore cannot render an opinion that the bucket was manufactured by Letica. A bucket identification expert would be a novel type of expert, but an expert's opinion is not needed. The trier of the facts can take the facts to which Rogers testifies and, along with other evidence, make a decision as to whether the bucket was a Letica bucket.

Letica also states that Rogers' affidavit contradicts an affidavit submitted by another Glidden employee which was submitted in the *Baker* case. Randolph Glau's affidavit states in pertinent part:

> To the best of my knowledge, Letica Corporation's competitors produce 5 gallon containers which are substantially similar in appearance to Letica's containers. Since all such 5 gallon containers are very similar in appearance, <u>it is difficult, if not impossible, to identify the manufacturer without looking at the bottom of the pail for manufacture identification.</u>

*Affidavit of Randolph J. Glau* (emphasis added). Letica goes on to state:

> For the record, no one ever saw, read, remembered, recorded, or knew anything about the exact language or markings on the bottom of the bucket that allegedly injured Mr. Baker. At a minimum, we ask the Court to strike the Affidavit of Charles C. Rogers and all evidence contrary to the Affidavit of Randolph J. Glau. The Glidden Company is judicially estopped to assert facts contrary to the Glidden/Glau Affidavit.

*Letica's Motions*, pg. 10. Alternatively, Letica asserts that, at the least, the statements in the two affidavits create a factual issue.

Glau states in his affidavit that identifying the bucket as a Letica bucket without looking at the bottom of the pail would be difficult if not impossible because Letica's five-gallon containers and the five-gallon buckets of other bucket manufactures are "substantially similar in appearance" and "very similar in appearance." Judicial estoppel does not apply under these circumstances. The

4

test for judicial estoppel is set out in the "Judicial Estoppel/Spoliation" section, *infra*.

The motion to strike the Rogers affidavit is due to be granted as to the ultimate conclusion that the bucket was a Letica bucket, but denied as to the underlying facts upon which Rogers' opinion is based.

## WHETHER THE BUCKET WAS A LETICA BUCKET

There is a dispute among the parties as to whether the paint bucket in question was actually manufactured by Letica. In support of its contention that the bucket was manufactured by Letica, Glidden states that "[Baker] knows that the paint bucket was a bucket manufactured by Letica and marketed by the Letica Corporation because of the imprint on the bottom of the bucket," *Glidden Brief*, pp. 2-3, and references page 78 of Baker's deposition.[2] Letica, however, states, correctly, that Baker did not so testify. Baker stated that he knew that the bucket he was handling was manufactured by Letica because of the imprint on its bottom, and that he did not look at the bottom of the bucket that allegedly injured him:

> Q. How do you know that this paint bucket was a bucket designed, engineered, manufactured and marketed by the Letica Corporation?
>
> A. By the imprint on the bottom.
>
> Q. Had you seen this particular paint can - - that is, the one that fell on your foot, did you see the imprint on the bottom of it?
>
> A. No.

*Baker Deposition*, p. 78. Baker further testified:

> Q. Can you testify under oath to a certainty that the bucket that you claim you

---

[2]Glidden actually references page 77 of Baker's deposition, but it seems clear that page 78 was the page Glidden meant to reference.

> picked up that day was a Letica bucket?
>
> A. It was identical to the one we have here.
>
> Q. Other than the fact that it's the same color, same design, do you know for a fact that it was a Letica bucket?
>
> A. Based on my experience, yes.
>
> Q. But you did not look at the bottom of that bucket that day?
>
> A. No, sir.
>
> Q. And you didn't see anything on the bucket that day that identified it as a Letica Bucket, did you?
>
> A. No., sir.
>
> Q. And if there were other suppliers or manufacturers of plastic buckets and they happened to be the same color and the same design as the Letica bucket, you couldn't tell the difference, could you, just looking at it?
>
> A. Without looking at the bottom, no.
>
> Q. And you did not do that on that occasion?
>
> A. No, sir. But I do know that it was - - it looked just like that.

*Id.* at pp. 112-114.[3]

Kenneth Lashbrook, Director of Quality Assurance for Letica, states in his affidavit that

---

[3]Although both parties state that the evidence is undisputed, some of the facts pointed out by the parties conflict, and sometimes the parties' representations are not complete. Letica states that the parties' stipulated that "the Glidden Company will not be able to produce or prove at trial the original bucket made the basis of this suit or the original purchase order made the basis of this suit," and refers to stipulations six and seven. *Letica's Motions,* pg.6. Stipulation six, however, simply states that "the actual paint bucket allegedly injuring Mr. Baker was never found, and the parties stipulate that it will never be found by either of the parties in this action, and there is no reasonable expectation that either party will find the said purchase order under which the bucket allegedly injuring Mr. Baker was purchased." The stipulation did not state that Glidden would not be able to prove at trial that the bucket came from Letica, for that is exactly what Glidden contends is true. It is not suggested that such misstatements were intentional, only inaccurate, requiring checking.

Letica's competitors produce five-gallon containers substantially similar in appearance to Letica's: "Any competitor supplying Glidden would have to meet Glidden's specifications, including color, making all such 5-gallon containers appear very similar and difficult to identify without looking at the bottom of the pail for identification." *Affidavit of Lashbrook,* ¶ 5. Further, when asked, "as far as the make of the bucket and the size and the weight and everything, all of them are the same whether they're made by Letica or any competitor," Lashbrook answered, "[i]t would be within a thousandth of an inch and be within some ten or fifteen grams." *Lashbrook Trial Testimony*, pg. 293.

It is concluded that there is a factual dispute as to whether the bucket which allegedly injured Baker was a Letica bucket.

### WHETHER THE BUCKET MUST HAVE BEEN A LETICA BUCKET

Glidden contends that "it is actually not essential for Glidden to prove the bucket was manufactured by Letica because, under the agreement, these corporations agreed that Letica was to provide indemnity when injuries 'are caused or alleged to have been caused by the purchase' of a Letica bucket. *Glidden's Brief*, pg. 5. The indemnity language states that Letica shall "hold harmless Buyer and its customers, from and against any claim(s) for injury, death, property damage or infringement of any patent, trademarks, copyright, trade secret or other right which are caused or alleged to have been caused by the purchase, sale or use of Letica paint cans." Glidden thus asserts the literal meaning of "alleged to have been caused;" that is, all that matters is that Baker alleged that the bucket in question was a Letica bucket.

Another interpretation is possible: indemnity is required when it is found that a Letica bucket actually caused injury, and indemnity is required when it is *alleged* that a *Letica* bucket caused

7

injury even if it is determined that the Letica bucket did not cause injury. In this event, the "alleged to have caused" language implies or assumes that the bucket is a Letica bucket. Otherwise, Letica would be liable to indemnify Glidden for a bucket that was not even its own.

Certainly, argument can be made in support of Glidden's assertion, but it is believed that the bucket which supposedly injured Baker must have been in fact a Letica bucket, and there is a good deal of evidence indicating that the bucket was manufactured by Letica.

## JUDICIAL ESTOPPEL / SPOLIATION[4]

Letica asserts that Glidden may not *now* take the position that it does not have to show that the bucket in question was a Letica bucket. Letica states that "[i]f Glidden needed the bucket for its defense before, doesn't Letica Corporation need the bucket to prove or disprove whether it is really our bucket. *Letica's Motions* pg.13. Glidden, in its reply, intimated that it did argue in the *Baker* case that production of the bucket was necessary to its defense: "No matter what was argued in the heat of a serious trial, the trial court didn't pay any attention to it and submitted the case to the jury on all issues — spoliation included." *Glidden's Reply Brief*, pg. 4. The court did not dismiss Baker's lawsuit because of the missing bucket, but Glidden and Letica managed to get the judge to give a spoliation charge, the propriety of which was the sole issue raised on appeal. The trial court had charged that the

> defendants also claim that the plaintiff was guilty of wrongfully destroying or disposing of material evidence, which was the paint bucket in issue. If you're reasonably satisfied from the evidence that plaintiff did or attempted to wrongfully destroy or dispose of such evidence, then that fact may be considered in your deliberations concerning the validity of plaintiff's claims.

---

[4] Letica asserted judicial estoppel as to the affidavits of Rogers and Portis. These two affidavits are discussed in the "Motion to Strike Affidavits" section, *supra*.

8

*Baker v. Letica Corporation, et al*, 785 So.2d 1142, 1143-44 (2000).

In support of its judicial estoppel argument, Letica cites *Consolidated Stores, Inc. v. Gargis*, 686 So.2d 268 (Ala. Civ. App. 1996). That case, citing an Alabama Supreme Court decision, stated:

> Our supreme court in *Porter v. Jolly*, 564 So.2d 434, 437 (Ala.1990), discussed the "doctrine of inconsistent positions." The court stated that in Alabama a party will not be permitted to maintain an inconsistent position or to take a position in regard to a matter that is directly contrary to one previously asserted by him, at least where he had full knowledge of the facts and where another would be prejudiced by his action. However, the doctrine of inconsistent positions has several limitations: (1) the prior position must have been asserted successfully and a judgment rendered in favor of the party against whom the doctrine is asserted; (2) the positions must be clearly inconsistent; (3) the parties and the questions must be the same; (4) the party claiming estoppel must have been misled and/or must have changed his position in reliance on the prior inconsistent position; and (5) it must be unjust to one party to permit the other to change positions.

*Id.* at 275. Clearly, the facts of the instant case do not meet all the elements of judicial estoppel, and therefore Glidden is not prohibited from contending that the bucket in question was a Letica bucket.

## PURCHASE ORDER / INDEMNITY CLAUSE

The motion to strike the Squires affidavit concerns the purchase order form and the indemnity clause. The affidavit states:

> I am employed by The Glidden Company, d/b/a ICI Paints ("Glidden") as Purchasing Manager - Chemicals. I have been employed by Glidden since July 1988 and have been in the capacity of Purchasing Manager - Chemicals since June 1995. My primary responsibilities are planning, organizing, negotiating, and administrating the procurement of raw materials to support manufacturing within Glidden.
>
> Attached to this affidavit is *a copy of a purchase order used by Glidden*. This purchase order is not the purchase order used by Glidden to purchase the paint bucket that is alleged to have broken and injured Mr. Baker, however, it is <u>an exact copy of the face and back of the purchase order form</u> (with the possible exception of the logo and reference to the company name) used by Glidden to purchase paint buckets from Letica Corporation. <u>No paint buckets were bought from Letica</u>

9

<u>Corporation by Glidden except pursuant to the terms and conditions on the attached purchase order form</u>.

<u>Glidden is unable to locate the exact purchase order</u> involved in this transaction with Letica Corporation, <u>but, as stated, terms and conditions governing that purchase would be exactly the same as those reflected in the attached purchase order</u>. The product information and buyer details reflected in the attached purchase order have been redacted to protect confidential company information. These specific details, of course, would be different from the details on the purchase order issued by Glidden to Letica Corporation, but the terms and conditions are the same.

*Affidavit of Eugene Squires*, ¶¶ 2, 3, and 5 (emphasis added).[5]

On the back of the purchase order are sixteen "terms and conditions." Term or condition sixteen contains the indemnity language:

Seller agrees that it shall, at its own expense, defend, indemnify and hold harmless Buyer and its customers, from and against any claim(s) for injury, death, property damage or infringement of any patent, trademarks, copyright, trade secret or other right which are caused or alleged to have been caused by the purchase, sale or use of Seller's products or services, and Seller shall pay all damages (whether direct, indirect, special or consequential), awards, interest, attorneys' fees and costs in connection therewith. Buyer agrees to give Seller prompt notice in writing of any such claim or of infringement and full opportunity to conduct the defense thereof.

Letica has several objections to this document, as follows.[6]

*Not the Original Purchase Order*

Letica contends that the purchase order form does not comport with Rule 1003 or Rule 1004(1)(2) and (4) of the federal rules of evidence. Letica states there has been no evidence or explanation from any custodian concerning the original purchase order or the record of retention

---

[5]There is no paragraph 4 in this affidavit.

[6]It seems that Glidden would have sent the purchase order to Letica, but the parties have not made such statement.

policy of Glidden. Citing Rule 901 of the Federal Rules of Procedure, which deals with authentication and identification, the defendant further asserts that the "double-faxed, tiny-print requires authentication concerning the "stops" it made. *Letica's Motions,* pg. 33. In its reply, Glidden relies on that part of Rule 1004 which provides that the contents of a document may be proven by other means when the original is lost or destroyed.

It is stated in the "Stipulations of the Parties" that "the exact purchase order under which the bucket allegedly injuring Mr. Baker was purchased has not been found by either of the parties in this action, and there is no reasonable expectation that either party will find the said purchase order under which the bucket allegedly injuring Mr. Baker as purchased." *Stipulations of the Parties,* ¶7. That stipulation does not intimate any wrongdoing on the part of Glidden. In fact, it indicates that the original document was lost.[7] Wherefore, that stipulation, along with Squires' statement that all of the purchase orders used by Glidden contained the indemnity language in question, allows the copy of the purchase order attached to Squires' affidavit to be admitted into evidence. This objection is due to be overruled.

*Variance Between Complaint and Purchase Order Attached to Squires' Affidavit*

Letica points out the variance between the indemnity language set out in Glidden's complaint and the indemnity language on the back of the purchase order. The latter contains the additional language "or alleged to have been caused:"

> Seller agrees that it shall, at its own expense, defend, indemnify and hold harmless Buyer and its customers, from and against any claim(s) for injury, death, property damage or infringement of any patent, trademarks, copyright, trade secret or other

---

[7] Squires states in his affidavit that Glidden could not locate the purchase form.

11

right which are caused *or alleged to have been caused* by the purchase, sale or use of Seller's products...

In its reply brief, Glidden states that the omission of this language in the complaint was simple error. In any event, it is the summary judgment evidence that is to be considered, not the allegations in the complaint. This objection is without merit.

*Statute of Frauds*[8]

Letica also asserts that the purchase order is violative of Alabama's statute of frauds, §7-2-201 (a), Code of Alabama, 1975, which states:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Letica states that "Glidden must produce a copy with a signature, the quantity, and the true terms under which the bucket in question was purchased." *Letica's Motion*, pg. 33.[9]

There is no merit to this objection, as the statute of frauds does not apply in this case. The purchase of the paint in question was a completed transaction.[10]

---

[8] Letica has scattered its statute of frauds objection by stating part of it in its "Motion to Strike" section and part in its "Statute of Frauds" section.

[9] This purchase order form must have been used many times by Glidden and Letica.

[10] Curiously, after arguing against the efficacy of the indemnity clause, Letica states that "[t]he indemnity language sought to be enforced would be fine if, for example, some harmful object was accidentally embedded in a Letica bucket, and someone proved they were harmed by a Letica bucket. Given these facts, Letica would be liable to indemnify Glidden." *Letica Motions*, pg. 20.

GLIDDEN'S NOTICE TO LETICA

Letica contends that the notice Glidden gave was inadequate and late. The *Baker* lawsuit was filed on February 11, 1998, with both Glidden and Letica named as defendants. In a letter dated June 30, 1999, Glidden's counsel requested that Letica hold it harmless and indemnify it:

> Last week Glidden contacted Letica and requested that it hold Glidden harmless and to indemnify it.
> I have carefully reviewed the indemnity agreement and it appears to me that Glidden is entitled to a defense and indemnity. Please accept this letter as a demand for such relief.
> If you do not have a copy of the agreement, I will be glad to provide you with one. Further, Richard or I will be glad to talk with you about it.

*Glidden's Evidentiary Submissions,* Exhibit 7. In another letter from Glidden's counsel to Letica, dated July 16, 1999, Glidden's counsel states, "The way Glidden buys buckets is by purchase order. I attach a copy for your review. Now, you know as to what I speak. Look at paragraphs 6 and 8. Your comments will be appreciated." *Glidden's Evidentiary Submissions,* Exhibit 7. Letica points out that "about 7 months transpired between their legal research on common-law indemnity until they received the 'purchase order,'" and suggests that Glidden "must have thought that they didn't have a purchase order." *Letica Motions*, pg. 31. While Letica contends that this action should be dismissed outright because of lack of proper notice, Letica also asserts that "Glidden is absolutely not entitled to any monies incurred by Glidden before [the June 30, 1999 letter]." *Letica's Motions*, pg. 31.

Letica cites *Cochrane Roofing & Metal Company, Inc. v. Callahan*, 472 So.2d 1005 (Ala. 1985). In this case, there was an indemnity agreement which ran from a sub-contractor to his contractor, for roofing work the sub-contractor completed in 1971. On July 9, 1980, a lawsuit was filed against the contractor. On July 21, 1980, after the lawsuit was filed but before service of the

summons and complaint, the contractor made the sub-contractor aware, by telephone, of the problem concerning the roof. On November 4, 1982, two years later, the contractor, by letter, demanded indemnification. The sub-contractor then brought an action for a declaratory judgment. The sub-contractor contended that the

> contractor had waived its rights under the indemnity provision of the contract by not notifying the subcontractor and by assuming the defense of the litigation and not forwarding a copy of the complaint to the subcontractor until more than two years had passed and the roof, the subject of another suit, had been re-covered by another contractor, preventing the subcontractor from investigating the problem.

*Id.* at 1007. The trial court ruled that the sub-contractor must indemnify the contractor, and the sub-contractor appealed. The Alabama Supreme Court set out and adopted the reasoning of the Supreme Court of Connecticut in a similar case. Though somewhat long, it is useful to set out that statement in full:

> The agreement contains no specific language requiring the town [indemnitee] to give D'Addario [indemnitor] notice of any action brought against it which it might claim arose out of the contract. But the parties could not have contemplated otherwise than that such notice would be given. The construction of the sewerage system was a broad undertaking necessitating the disturbance of highways for which the town was responsible. If the town was to have the full measure of protection which the indemnity provision afforded and D'Addario was to have the opportunity of effectively discharging his part of the obligation, notice to him was indispensable. 'Conditions upon which the right to require performance of a contract obligation depends may often be implied where not to do so would defeat the clear intention of the parties and the object of the contract.' *Rifkin v. Safenovitz*, 131 Conn. 411, 415, 40 A.2d 188 [190]; *Leventhal v. [town of] Stratford*, 121 Conn. 290, 295, 184 A. 587; *Rockwell v. New Departure Mfg. Co.*, 102 Conn. 255, 286, 128 A. 302. The circumstances under which the contract was made, as well as all the other provisions of the contract, are determinative factors in ascertaining intent. *Avco Mfg. Corporation v. Connelly*, 145 Conn. 161, 169, 140 A.2d 479; *United Aircraft Corporation v. O'Connor*, 141 Conn. 530, 538, 107 A.2d 398; *Colonial Discount Co. v. Avon Motors, Inc.*, 137 Conn. 196, 200, 75 A.2d 507. The indemnity provision of this contract contemplated that suits might be brought against the town for highway defects which it could claim were caused by D'Addario. The town would have peculiar knowledge of these suits and therefore was obligated to notify D'Addario of them. *It can be fairly implied that the giving of reasonable notice was a condition*

14

> *precedent to D'Addario's duty to defend and indemnify.* 3 Williston, Contracts (Rev.Ed.) § 887B. Furthermore, when a party to a contract assumes an express obligation to do certain things--in this case, to defend and indemnify the plaintiff-- *the law implies a corresponding obligation on the other party to allow him all reasonable opportunity to perform.* Rockwell v. New Departure Mfg. Co., supra; 3 Williston, op. cit., p. 1956; Restatement, 2 Contracts § 395, comment c. The cooperation required may be, as in the instant case, the giving of timely notice. 3A Corbin, Contracts, p. 386; 3 Williston, op. cit. § 887B.
>
> "Kant sued the town on May 12, 1953. The town failed to inform D'Addario of the suit until January 22, 1956. He was entitled to employ his own counsel to investigate the facts and prepare his defense. He was not, as the town claims, required to accept a report, made to it three years before, of an investigation by its police department. An independent investigation by D'Addario three years after the occurrence would have been of little, if any, use in the defense against Kant's claims as to either liability or damages. The notice of Kant's action came altogether too late to be called reasonable. That term is a relative one. Its meaning is affected by the circumstances under which it is called into use. E.M. Loew's Enterprises, Inc. v. Surabian, 146 Conn. 608, 612, 153 A.2d 463. The notice was not timely in this case. The court did not err in rendering judgment for D'Addario." (Emphasis added.) 149 Conn. at 361-63, 179 A.2d at 828-29.

*Id.* at 107-08 (emphasis added). The Alabama Supreme Court reversed the trail court, stating:

> We have held that indemnity provisions in construction contracts are valid in *Alabama, Industrial Tile, Inc. v. Stewart*, 388 So.2d 171 (Ala.1980), and we do not retreat from that holding. However, we also hold that to be binding on the party agreeing to indemnify and save harmless the other party, he must receive notice of a claim which he must defend, for only in this way can he investigate the claim and prepare his defense. He must also be promptly forwarded a copy of the complaint once it is served upon the indemnitee. Here the complaint was not forwarded to the subcontractor for over two years. The contractor retained counsel of its choice, who prepared a defense without consulting with the indemnitor/subcontractor. Now, at this late date, it calls upon the indemnitor to pay the lawyer of the contractor's choice and to save harmless the contractor. Having failed to perform its part of the bargain, the contractor cannot now compel performance by the subcontractor.

*Id.* at 1008 (emphasis supplied). Although the word "prejudice" was not used, the Connecticut Supreme Court and the Alabama Supreme Court discussed the harm that an indemnitor might suffer if he were not given reasonable notice of a claim against the indemnitee. Those courts stated that the indemnitor has a right to conduct a timely investigation of the facts, to hire its own counsel, and to

15

prepare a defense.

The Glidden-Letica indemnity provision certainly contemplated that legal action against Glidden might be brought for defects which Glidden could claim were caused by the indemnitor. Letica, however, knew of Baker's claim because Letica, along with Glidden, was named as a defendant in the original *Baker* complaint.[11] Therefore, starting at the same time as Glidden, Letica conducted its own investigation and hired its own attorney.

It is thought that whether the notice given to Letica was reasonable under the circumstances presents a fact question. What prejudice Letica suffered, in any, from not having been given earlier notice, cannot be determined from the evidence before the court. It is likely that any such prejudice should be taken into account in determining the amount of indemnity, if any, Glidden should be awarded.

## WHETHER INDEMNITY LANGUAGE COVERS GLIDDEN'S NEGLIGENCE

"[I]f the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld." *Tile, Inc. v. Stewart*, 388 So.2d 171, 176. (1090). The indemnity language in *Tile v. Stewart* expressly stated that the agreement to indemnify covered the indemnitee's own negligence:

> The Contractor (Industrial Tile) shall be solely responsible to indemnify and hold harmless the Owner (Courtaulds), its agents, servants and employees, from and against any and all claims, losses, suits, damages, judgments, expenses, costs and charges of every kind and nature, whether direct or indirect, on account of or by reason of, bodily injuries (including death) to any person or persons, including, but

---

[11]Apparently, as Letica states, Glidden itself, or its counsel, did not realize that there was an indemnity agreement until around the date of the first letter.

> not limited to its agents, servants and employees or other of the Owner, Contractor or any subcontractor and injury to or destruction of property (including the loss of use thereof) of the Owner, or others arising out of or occurring in connection with the performance of the work to be done pursuant to the contract and whether or not caused by or contributed to, or alleged to have been caused by or contributed to, by the active, passive, affirmative, sole or concurrent negligence or breach of any statutory duty, whether non-delegable or otherwise on the part of the owner or its agents, servants or employees, or liability therefor imputed as a matter of law to the owner and/or its agents, servants or employees or from the failure of or any condition in materials or parts or faulty workmanship furnished by the Owner, Contractor or any Sub-Contractor and/or their respective agents, servants or employees pursuant to the Contract.

*Id.* at 175. There is no such express language in the indemnity clause before this court. It is believed, therefore, that Glidden's negligence, if any, would preclude any recovery under the indemnity clause.

With respect to negligence, Glidden states that the *Baker* case determined that neither Glidden nor Letica was negligent: "There is absolutely no evidence anywhere for the assertion that Glidden damaged the bucket. The *Baker* case was not tried on the basis of an abused bucket. The case was grounded on a defect in design of the bucket." *Glidden's Reply Brief,* pg. 5. The basis for the *Baker* verdict has not been established. In any event, Letica has pointed to no evidence indicating that Glidden was negligent.[12]

---

[12]Letica states that the *Baker* case decided that Letica did nothing wrong. Letica asserts:
> The jury verdict, under a strict construction, supersedes the *allegation* of causation, and we claim as a matter of law disproves the allegation. The indemnity clause should not be construed to apply to an unfounded and then legally *disproved* allegation by a person who loses his jury trial and his subsequent appeals. When allegations are disproved, they should not provide the basis for indemnity. Now, after the exhaustion of all appeals, it is no longer even *contended* that the Letica bucket caused the injuries. By waiting until the end of the Baker case to sue, Glidden waived its indemnity claim for mere allegations.

*Letica's Motions*, pg. 19. The jury's findings are unknown, and the indemnity agreement does not require a finding that Letica was negligent.

17

THE UCC

Letica also cites UCC statutes §§ 7-2-513, 602, and 606, stating that "it is clear under the UCC that Glidden accepted the empty bucket under §7-2-606 (What constitutes acceptance of goods); had a right to inspect it under §7-2-513 (Buyers's right to inspection of goods); and there is no evidence they rejected it pursuant to §7-2-602 (Manner and effect of rightful rejection)." *Letica's Motions*, pg. 15. Letica cites these statutes apparently to show that if the bucket was a Letica bucket, and if it had something wrong with it, Glidden should have so notified Letica. It is opined that the lack of objection does not necessarily mean that there was nothing wrong with the Letica bucket when Glidden got it from Letica.[13] Moreover, Glidden's case does not depend on a finding that the bucket was actually defective.

CONCLUSION

For the reasons stated above, Letica's motion to strike exhibits should be granted in part and denied in part, as follows: the motion to strike the Portis affidavit is due to be granted, the motion to strike the Squires affidavit is due to be denied, and the motion to strike the Rogers affidavit is due to be granted as to his opinion but denied as to the facts underlying that opinion (ct. doc. 19). Because of the fact questions as to whether the bucket in question was a Letica bucket and whether Glidden's indemnity demand was reasonable, Glidden's motion for summary judgment (ct. doc.16)

---

[13] Letica also states that no one could have been injured by the weight of the plastic alone, but only by the paint Glidden put into the bucket. Of course, the purpose of the bucket was to put paint into it.

and Letica's motion for summary judgment (ct. doc. 19) are due to be denied.[14] An order in accordance with this Memorandum of Opinion will be entered. Finally, this case appears to be a good candidate for mediation. If the parties agree, they should notify the court within seventeen (17) days.

DONE this 20th day of March, 2003.

Robert R. Armstrong, Jr.
United States Magistrate Judge

---

[14] Glidden has not submitted evidence of the attorney's fees incurred.